## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| **JOSEPH DiMARIA, Administrator of the** | ) | |
| **Estate of MICHAEL DiMARIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No.** |
| | ) | **12-11139-FDS** |
| **v.** | ) | |
| | ) | |
| **CONCORDE ENTERTAINMENT, INC.** | ) | |
| **d/b/a BILL'S BAR/THE LANSDOWNE PUB** | ) | |
| **and LYONS GROUP, LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR
### SUMMARY JUDGMENT AND MOTION TO STRIKE

**SAYLOR, J.**

This is an action for personal injury and wrongful death.  On August 14, 2010, Michael

DiMaria was at the Lansdowne Pub in Boston when he was struck by a glass thrown by another

patron.  He sustained severe injuries and later died.  Joseph DiMaria, the administrator of

Michael DiMaria's estate, has brought suit against Concorde Entertainment, Inc. and Lyons

Group, Ltd., which allegedly own and operate the Lansdowne Pub, for failing to keep the

premises safe.  The complaint brings claims for negligent wrongful death and grossly negligent

wrongful death.

On November 8, 2013, Lyons Group moved for summary judgment as to all claims

against it and, on December 13, 2013, moved to strike portions of plaintiff's opposition.  For the

reasons set forth below, the motion to strike will be granted and the motion for summary

judgment will be granted.

I.       **Background**

The facts are presented in the light most favorable to the non-moving party, the plaintiff.

A.       **Factual Background**

Michael DiMaria was a patron of the Lansdowne Pub on the evening of August 13, 2010. Sometime after midnight, a dispute arose between one of his friends, Russell Notti, and another patron, Hector Guardiola.  The two argued for one or two minutes, and others tried to pull them apart.  Guardiola threw a glass at Notti but missed.  The glass instead struck a wrought iron railing, broke into shards, and struck Michael DiMaria at his jugular vein.  He began bleeding profusely.  Although Boston EMS personnel arrived shortly thereafter, he became unresponsive within minutes. After being transferred to Brigham and Women's Hospital, he was pronounced dead.

B.       **The Parties**

Concorde Entertainment, Inc. owns the Lansdowne Pub and Bill's Bar.  Both bars are on Lansdowne Street in Boston.  Patrick Lyons and Edward Sparks are corporate officers of Concorde and hold ownership interests in the company.

Lyons and Sparks also own Lyons Group, Ltd.  Lyons Group provides "back-of-the-house" services to a number of New England dining and entertainment venues of which Lyons and Sparks are owners or members.  Those services include licensing, buying insurance, accounting, human resources, and administrative services.  The services do not, however, include day-to-day management.  Lyons testified that he "dream[s] up the business, the creative aspect of it" while Sparks "oversee[s] back of the house, accounting and things of that nature." (Mot. Summ. J., Ex. C, Lyons Depo. at 6).  There is no written contract between Concorde and

Lyons Group for the services provided, but Concorde does pay a periodic fee to Lyons Group.

Defendant asserts that Lyons Group does not own or operate any venues, and the parties agree

that Lyons Group does not own or operate Concorde.

In August 2010, Concorde held the liquor and entertainment licenses for the Lansdowne

Pub.  The general manager and manager of record for Concorde was Melissa Marabella.  She

was responsible for hiring, training, staffing, conducting restaurant functions, interacting with

customers, and security.  Marabella and Kelly Brooks, the assistant manager, developed the

security manual for the Lansdowne Pub.  They also created the employee handbook, which, prior

to finalization, they sent to Greg Hamm, head of Lyons Group's human resources department,

who then sent it to be reviewed by legal counsel.  All Lansdowne Pub staff, including the seven

security-team members who were working on the night of August 13, were employed and trained

by Concorde.  Stephen Coyle was Director of Operations for Concorde, and he assisted in

operations and management of the Lansdowne Pub.  At the same time, Coyle was also Senior

Vice President of Operations for Lyons Group, in which role he purchased liquor and supplies

for Lyons Group's customers, including Concorde.  He received paychecks from both

companies.

### C.   **Procedural Background**

On May 29, 2012, Joseph DiMaria, administrator of Michael DiMaria's estate, filed suit

in the Superior Court against Concorde.  Concorde removed the action to this Court based on

diversity jurisdiction.  On May 3, 2013, this Court granted plaintiff leave to amend the complaint

to add Lyons Group as a defendant.  Lyons Group has moved for summary judgment and to

strike portions of plaintiff's opposition.

3

## II.    <u>Standard of Review</u>

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).  In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party.  *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

As a general matter, only evidence that would be admissible at trial may be considered in connection with a motion for summary judgment.  *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990).  Plaintiff, as the proponent of the challenged evidence, "bears the burden" of proving admissibility.  *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997).

## III.    <u>Analysis</u>

### A.    <u>Defendant's Motion to Strike</u>

Defendant objects in part to plaintiff's Exhibits U, V, W, X, Y, and CC on the ground

that they have not been authenticated.

The law is well-established that "[d]ocuments supporting or opposing summary judgment must be properly authenticated." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. Rule 56(c), (e)). Generally, authentication requires competent testimony concerning the document. *See* Fed. R. Evid. 901(b)(1). Certain categories of documents are self-authenticating under Fed. R. Evid. 902, and require no extrinsic testimony. Each document submitted in support of summary judgment must either be properly authenticated or must be self-authenticating under the Federal Rules of Evidence. The authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be. *Goguen ex rel. Estate of Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16-17 (D. Mass. 2006).

Here, plaintiff has not attempted to authenticate any of the disputed exhibits, nor do those exhibits meet the requirements for self-authentication. Although many appear to be genuine, the appearance of authenticity is not enough. In response to defendant's motion to strike, instead of resubmitting his evidence in proper form and including authenticating affidavits, plaintiff simply asserted that the evidence is relevant. But relevance is not the only requirement for admissibility. Accordingly, the exhibits will be struck.

Defendant also objects to paragraphs 33, 37 (partial), 38, 40 (partial), 41, 42, 45, 46, 48, 49, 50, 51, 52, 60, and 61 of plaintiff's additional statement of material facts because they rely on inadmissible evidence or misstate the evidence. The Court agrees, and those paragraphs likewise will be struck.

**B.**      **Defendant's Motion for Summary Judgment**

Plaintiff contends that although Lyons Group did not own Concorde, Lyons Group had a right to control Concorde and therefore an agency relationship existed between them. Lyons Group may, under this theory, be held responsible for the alleged negligence and gross negligence of Concorde in maintaining the premises and providing security.

Under Massachusetts law, a proof of negligence requires that the plaintiff establish that the defendant owed him or her a duty of care. *Davis v. Westwood Group*, 420 Mass. 739, 742-43 (1995). A person or entity that owns, operates, manages, or controls a bar owes duty of care to the patrons. *See Cimino v. Milford Keg, Inc.*, 385 Mass. 323, 327-28 (1982).

A principal may be held directly liable for the actions of its agent toward third parties "if the agent was acting with the actual or apparent authority of the principal in that transaction." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 743 (2000) (citing Restatement (Second) of Agency §§ 7, 8 (1958)). "An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control." *Theos & Sons, Inc.*, 431 Mass. at 742. There are three essential characteristics of an agency relationship: (1) the power of the agent to alter the legal relationships between the principal and third parties and the principal and himself; (2) the existence of a fiduciary relationship of the agent toward the principal as to matters within the scope of the agency; and (3) the right of the principal to control the agent's conduct as to matters within the scope of the agency. *Canney v. City of Chelsea*, 925 F. Supp. 58, 64 (D. Mass. 1996) (citing Restatement (Second) of Agency §§ 12-14 (1958)). As to the third characteristic, the principal need not in fact exercise that control; the crucial inquiry is whether he has a right to

6

control.  *Id.*  Whether an agency relationship exists is a question of fact for the jury, but a court

may find that no such relationship exists if there is no genuine issue of material fact.  *Id.* at 742;

*White's Farm Dairy, Inc. v. De Laval Separator Co.*, 433 F.2d 63, 66 (1st Cir. 1970).

Here, the undisputed evidence demonstrates that Concorde alone was responsible for the

operation of the Lansdowne Pub.  Its employees were responsible for day-to-day management,

hiring and firing, training, and staffing.  Lyons Group assisted in certain discrete tasks, such as

accounting, human resources, recruiting, and licensing.  But it was removed from the everyday

operation of the pub.

Furthermore, the complaint specifically alleges a failure to provide adequate security.

But plaintiff has submitted no evidence showing that Lyons Group had any role in, or control

over, security.  According to the record, Concorde alone was responsible for the hiring, training,

discipline, and oversight of its security staff.

Coyle's statement in his deposition that Lyons Group "managed" venues is not to the

contrary.  He also testified that by "management" he meant providing accounting, human

resources, and marketing services.  (Mot. Summ. J., Ex. I, Coyle Depo., at 6).  And he later

testified that Lyons Group does not operate Lansdowne Pub, and does not control the Pub's

security operations.  (*Id.* at 31-32, 38).[1]

The situation here is easily distinguished from that in *Moses v. Diocese of Colorado*, 863

P.2d 310 (Colo. 1993), cited by plaintiff.  In *Moses*, the Colorado Supreme Court upheld a jury

verdict that an Episcopal Diocese and bishop had negligently hired and supervised a priest who

---

[1] The fact that both Concorde and Lyons Group employed and paid Coyle is not, in light of the circumstances here, proof of an agency relationship sufficient to defeat summary judgment.  Among other things, plaintiff has not alleged or presented evidence of any violation of the corporate form.

had had sexual relations with a parishioner.  The evidence at trial had shown that a hierarchical

structure existed within the Church, and that the Diocese and Bishop had control over the hiring,

disciplining, counseling, compensation, and everyday duties of priests.  *Id.* at 325-27.  Such

evidence is lacking here.  Instead, even viewing the record in the light most favorable to the

plaintiff, Concorde, not Lyons Group, had exclusive control over such matters.[2]

No genuine issue of material fact exists as to whether an agency relationship existed

between Concorde and Lyons Group that would give rise to a duty on behalf of Lyons Group to

plaintiff.  Accordingly, the motion for summary judgment will be granted.

## IV.   Conclusion

For the foregoing reasons, defendant's motions for summary judgment and to strike are

GRANTED.

**So Ordered.**

        /s/ F. Dennis Saylor
        F. Dennis Saylor IV
        United States District Judge

Dated: February 5, 2014

---

[2] A court may, in its discretion, allow a party to remedy a failure to authenticate documents.  *See Setterlund v. Potter*, 597 F. Supp. 2d 167, 173-74 (D. Mass. 2008).  However, even presuming that plaintiff had properly authenticated exhibits U, V, W, X, Y, and CC, they would not have been sufficient to raise a genuine dispute of material fact as to the existence of an agency relationship.  The records that Patrick Lyons and Lyons Group had owned and operated other venues in the past does not establish that Lyons Group owned and operated the Lansdowne Pub in August 2010.  The letters on Concorde stationery from Lyons Group Risk Manager Katina Kouripines to the Mayor of Boston's Office of Consumer Affairs regarding changes at the Lansdowne Pub after DiMaria's death were within the scope of her position at Lyons Group—to obtain and maintain licensing for its clients—and do not indicate that Lyons Group had control over the security changes discussed in that letter.